# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| CHARLES HART, ) | |
| ) | |
| Plaintiff, pro se, ) | |
| ) | **MEMORANDUM OPINION** |
| v. ) | **AND RECOMMENDATION** |
| ) | |
| AAMCO TRANSMISSIONS, INC., ) | 1:09CV311 |
| ) | |
| Defendant. ) | |

This matter is before the court on a motion to dismiss (docket no. 10) by Defendant AAMCO Transmissions, Inc. ("Defendant" or "AAMCO"). Pro se Plaintiff Charles Hart has filed a brief in opposition to the motion. In this posture, the matter is ripe for disposition. Since there has been no consent to the jurisdiction of the magistrate judge, the court must deal with the motion by way of a recommended disposition. For the reasons discussed herein, it will be recommended that Defendant's motion to dismiss be granted.

**BACKGROUND**

Defendant AAMCO is a franchisor of transmission repair businesses. Plaintiff's complaint arises from his allegations that in 2005 an independently owned and operated franchisee of AAMCO made unnecessary repairs to one of Plaintiff's automobiles and that in 2007, when Plaintiff took in his automobile for more repairs, the franchisee refused to return Plaintiff's automobile for 28 days even after Plaintiff

demanded the return.  Plaintiff asserts liability against Defendant AAMCO under theories of direct and vicarious liability based on an Order issued by the Federal Trade Commission ("FTC") in 1970, in which the FTC accused AAMCO of fraudulently telling customers that they needed transmission replacements. Plaintiff claims that Defendant AAMCO has failed to adhere to the FTC Order.

**FACTS**

Plaintiff's complaint arises out of two transactions between Plaintiff and an individually owned and operated AAMCO Transmission Center ("the Center") in Burlington, North Carolina.  First, Plaintiff alleges that on November 8, 2005, the Center sold Plaintiff an unnecessary repair to his 1995 Ford Explorer at a charge of $1,955.77.  The second transaction giving rise to Plaintiff's claims occurred on August 7, 2007, when Plaintiff returned to the Center, again experiencing problems with his Ford Explorer.  Plaintiff demanded that the Center repair his vehicle without charge, and the operators at the Center refused to do so.  (*See id.* ¶¶ 47, 51.)

On August 9, 2007, Plaintiff demanded that the Center release his vehicle. (*Id.* ¶ 52.)  Plaintiff alleges that because he initially refused to sign a repair order acknowledging that he had declined the needed repairs, the operators of the Center refused to release the vehicle.  (*Id.*)  On September 6, 2007, Plaintiff signed the repair order, and the operators at the Center released the vehicle to Plaintiff.  (*Id.* ¶ 68.)  Plaintiff was not charged and did not pay any money for the return of his vehicle. (*See id.*, Ex. 14A.)  Plaintiff seeks damages based on his allegation that he

was wrongfully deprived of the use and enjoyment of his 1995 Ford Explorer from August 9, 2007, to September 6, 2007. (*See id.* ¶ 70.)

Plaintiff asserts liability against Defendant in this case under theories of direct and vicarious liability based on an order issued by the Federal Trade Commission ("FTC") in 1970. The gist of Plaintiff's allegations against Defendant here is that the FTC previously found Defendant liable of, among other things, fraudulently telling customers that they needed unnecessary transmission replacements and that Defendant failed to adhere to a subsequent consent order and agreement to stop its fraudulent practices.

Plaintiff has already filed similar claims in state court against third parties arising out of the events alleged in this lawsuit, but this is the first case in which Plaintiff has named AAMCO as a defendant. Plaintiff first alleged the claims set forth in this action against various third parties in Alamance County Superior Court in January 2008. Plaintiff subsequently dismissed that action and then filed it again against the third parties in Guilford County Superior Court in May 2008, where Plaintiff pursued his claims until the action was stayed and then dismissed in January 2009.

**DISCUSSION**

Defendant has filed a motion to dismiss based on lack of subject matter jurisdiction, lack of standing, and failure to state a claim. Defendant's first ground for dismissal is brought pursuant to Rule 12(b)(1) for lack of subject matter

jurisdiction.  When a defendant challenges subject matter jurisdiction under Rule 12(b)(1), the plaintiff has the burden of establishing jurisdiction.  *McDonald Bros., Inc. v. Tinder Wholesale, LLC*, 395 F. Supp. 2d 255, 262 (M.D.N.C. 2005).  Here, the sole basis for subject matter jurisdiction in this court is diversity of citizenship under 28 U.S.C. § 1332.  When federal jurisdiction is based on diversity of citizenship, the party asserting jurisdiction bears the burden of proving that the suit is between citizens of different states and that the amount in controversy exceeds $75,000.[1] *See Sayre v. Potts,* 32 F. Supp. 2d 881, 883-84 (S.D. W. Va. 1999).  While the defendant is normally bound by the amount in controversy claimed by the plaintiff in his complaint, jurisdiction is not established where it is apparent to a legal certainty that the plaintiff cannot recover the amount claimed.  *McDonald Bros.*, 395 F. Supp. 2d at 262.  Defendant concedes that the parties are diverse, but Defendant contends that Plaintiff has not shown that the amount in controversy exceeds $75,000.  For the following reasons, I agree.

In the complaint, Plaintiff has alleged various torts and other claims arising from two transactions: (1) the allegedly unnecessary repairs done on Plaintiff's Ford Explorer in 2005, and (2) the 2007 transaction in which Plaintiff's Ford Explorer was allegedly withheld from him for 28 days.  The total cost incurred by Plaintiff in connection with the 2005 transaction was $1,955.77.  (*See* Compl. ¶ 34.)  Defendant

---

[1] 28 U.S.C. § 1332(a)(1) provides:  The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . [c]itizens of different states.

notes that Plaintiff has conceded that the flywheel on his Ford Explorer was indeed broken and did need to be replaced. The cost to repair the flywheel was $56.98, bringing his total out-of-pocket damages for alleged unnecessary repairs down to $1,898.79. (*See id.*, Ex. 4.) With respect to the 2007 transaction, Plaintiff claims that, as a result of being deprived of the use and enjoyment of his 1995 Ford Explorer for 28 days, he had to purchase a substantially newer 2002 Explorer for $9,500. Therefore, the total compensatory damages pled in the complaint amount to $11,398.79. This figure is obviously well below the $75,000 threshold required under section 1332 to establish subject matter jurisdiction based on diversity of citizenship.

Plaintiff relies on his claim for punitive damages against AAMCO in an attempt to meet the jurisdictional amount. In determining whether a plaintiff can recover the amount of damages claimed to meet the jurisdiction requirement under 28 U.S.C. § 1332, federal courts apply the forum state's rules regarding the applicable measure of damages, such as punitive damages. *McDonald Bros.*, 395 F. Supp. 2d at 262. North Carolina's Damages statute defines the standards for recovery of punitive damages as follows:

> (a) Punitive damages may be awarded only if the claimant proves that the defendant is liable for compensatory damages and that one of the following aggravating factors was present and was related to the injury for which compensatory damages were awarded:
> (1) Fraud.
> (2) Malice.
> (3) Willful or wanton conduct.

> (b) The claimant must prove the existence of an aggravating factor by clear and convincing evidence.
> (c) Punitive damages shall not be awarded against a person solely on the basis of vicarious liability for the acts or omissions of another. Punitive damages may be awarded against a person only if that person participated in the conduct constituting the aggravating factor giving rise to the punitive damages, or if, in the case of a corporation, the officers, directors, or managers of the corporation participated in or condoned the conduct constituting the aggravating factor giving rise to punitive damages.
> (d) Punitive damages shall not be awarded against a person solely for breach of contract.

N.C. GEN. STAT. § 1D-15. North Carolina's prohibition against awarding punitive damages against a person solely based on vicarious liability, and prohibiting punitive damages against corporations unless the officers, directors, or managers of the corporation participated in or condoned the conduct constituting the aggravating factor reflects the common law notion that "[t]he sole purpose of the allowance of punitive damages is to punish the wrongdoer." *Thorpe v. Wilson*, 58 N.C. App. 292, 299, 293 S.E.2d 675, 680 (1982).

Defendant contends that, in applying North Carolina's damages statute to Plaintiff's allegations, it is apparent to a legal certainty that punitive damages cannot be awarded against Defendant because the aggravating factors alleged in the complaint were conducted solely, if at all, by third parties. I agree. In the complaint, Plaintiff identifies the conduct he contends constituted the aggravating favors giving rise to his punitive damages claims. The factors alleged in the complaint, however, relate solely to the treatment he received at the Center from third parties, none of whom is Defendant AAMCO, or its officers, directors, or managers. Indeed, the

Center is not owned or operated by Defendant AAMCO, which is merely the franchisor of the Center.[2] Moreover, with respect to the 2007 transaction, Plaintiff alleges that an employee of the Center, Rob Sutton, acted "with vindictive, malicious, and fraudulent intent" in connection with the alleged refusal to release Plaintiff's vehicle. (*See id.* ¶ 67.) Plaintiff does not contend that Defendant, its officers, directors, or managers, committed any of the conduct constituting the aggravating factors giving rise to Plaintiff's claims. (*See id.* ¶¶ 23-70.)

The complaint further makes clear that Defendant AAMCO did not condone, or even know about, any of the aggravating factors giving rise to Plaintiff's punitive damage claims. (*Id.*) Indeed, as Defendant notes, Plaintiff never contacted Defendant to advise Defendant that he was being defrauded at the Center, or that he was being treated with vindictive, malicious conduct. In sum, Defendant played no role in the aggravating factors alleged in the Complaint. Therefore, Plaintiff has simply not shown that he has a plausible claim for punitive damages against Defendant under North Carolina law. It is therefore apparent to a legal certainty that Plaintiff cannot recover damages in excess of $75,000 against Defendant based on his claim for punitive damages. *Accord Tobin v. Algoro*, No. 07-163-B-W, 2007 WL 3232561, at *2 (D. Me. Oct. 26, 2007) (magistrate report and recommendation, later adopted by the district court, where the pro se plaintiff could not show that state law

---

[2] Plaintiff signed repair orders in connection with both the 2005 and 2007 transactions, and both repair orders notified him that the Center was "independently owned and operated." (*See* Compl., Exs. 4, 14A.)

would have allowed for punitive damages against the defendant, the plaintiff could not meet the amount-in-controversy threshold for diversity jurisdiction).

Next, I note that Plaintiff has also alleged a claim against Defendant for unfair and deceptive trade practices in the complaint. *See* N.C. GEN. STAT. ¶ 75-1.1. North Carolina's unfair and deceptive trade practices statute allows for treble damages, but even if the court were to treble Plaintiff's compensatory damages, this amount would not get close to reaching the amount-in-controversy threshold.

Furthermore, Plaintiff's claim that he is seeking $10 million in damages for his alleged emotional distress is not made in good faith. *See Wiggins v. N. Am. Equitable Life Assurance Co.*, 644 F.2d 1014, 1016-17 (4th Cir. 1981) (stating that the jurisdictional amount must be made in good faith). The court feels confident in stating that it is legally certain that Plaintiff has no chance of recovering $10 million for the emotional distress Plaintiff allegedly suffered as a result of having to pay an alleged $1,898.79 in unnecessary repairs to his Ford Explorer and by being deprived of the use of his Ford Explorer for 28 days.

Finally, Plaintiff contends in his brief that the value of the injunctive relief he seeks would exceed $75,000. It is well settled that in actions for declaratory or injunctive relief, the amount in controversy is measured by the value of the object of the litigation. *See Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977). As part of his request for injunctive relief, Plaintiff seeks to have this court require Defendant to put signs in every franchise center notifying potential customers

that Defendant has been found liable of committing fraud and unfair and deceptive business practices and encouraging customers to contact the State Attorney General if the customer feels that the franchise has committed unlawful acts. Plaintiff contends that the cost to Defendant of placing these signs would alone satisfy the jurisdictional amount. As Defendant notes, however, the injunctive relief sought by Plaintiff is wholly unrelated to preventing the occurrence of irreparable harm to Plaintiff, but is instead directed at the FTC Order and other alleged state consent judgments. Thus, Plaintiff cannot meet the jurisdictional amount based on the injunctive relief sought against Defendant.

Finally, Plaintiff contends that he can meet the jurisdictional amount based on his potential recovery of attorneys fees. Plaintiff is proceeding pro se, which means of course that he is not represented by an attorney in this matter. A litigant that is not represented by an attorney does not incur attorneys fees. Furthermore, Plaintiff's argument that he can meet the jurisdictional amount in this lawsuit based on attorneys fees he could recover in *other*, completely separate lawsuits is entirely without merit.

In sum, the amount in controversy has not been met, subject matter jurisdiction is lacking, and this action should be dismissed without prejudice so that Plaintiff may refile his claims in state court. Since subject matter jurisdiction is lacking, the court does not address Defendant's alternative grounds for dismissal.

**CONCLUSION**

For the reasons stated above, it is **RECOMMENDED** that the court **GRANT** the motion to dismiss (docket no. 10) based on lack of subject matter jurisdiction. Furthermore, the dismissal should be without prejudice so that Plaintiff may refile his claims in state court.

_____
WALLACE W. DIXON
United States Magistrate Judge

Durham, NC
August 12, 2009